UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON L. ENSEY, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>GOVERNMENT EMPLOYERS INSURANCE COMPANY, GEICO CASUALTY COMPANY, GEICO INDEMNITY COMPANY, and GEICO GENERAL INSURANCE COMPANY,<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-07669<br>(JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

LOCKS LAW FIRM, LLC
Michael A. Galpern, Esq.
Andrew P. Bell, Esq.
James A. Barry, Esq.
457 Haddonfield Rd, Suite 500
Cherry Hill, NJ 08002
    Counsel for Plaintiff

ANDRES & BERGER, P.C.
Ken Anders, Esq.
Tommie Ann Gibney, Esq.
264 Kings Highway East
Haddonfield, NJ 08033
    Counsel for Plaintiff

WHITE AND WILLIAMS LLP
Michael N. Onufrak, Esq.
Edward M. Koch, Esq.
457 Haddonfield Rd, Suite 400
Cherry Hill, NJ 08002
    Counsel for Defendants

**Irenas**, Senior District Judge:

This automobile insurance dispute comes before the Court on Defendant Government Employers Insurance Company's ("GEICO")[1] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[2] Plaintiff Shannon Ensey claims that GEICO violated its statutory and contractual obligations by failing to provide her with a coverage selection form ("CSF") at the inception of her coverage and failing to apprise her, both at that time and throughout the course of her coverage, of the opportunity to raise her uninsured motorist ("UM") and underinsured motorist ("UIM") coverage. Plaintiff also claims that an unlicensed GEICO customer service representative effectuated requested changes to her policy in violation of statutory law.

Plaintiff brings this suit in her individual capacity as well as the representative of the following putative class:

> All persons in the State of New Jersey who, since at least December ___, 2006 [sic] (or such date as discovery may disclose) have been policyholders or beneficiaries of standard automobile liability insurance policies sold in the State of New Jersey by [GEICO] that have provided Uninsured/Underinsured coverage limits of less than the limits of Bodily Injury Liability coverage limits or $250,000 (whichever is less) and as to whom [GEICO] does not have in its possession such persons' affirmative election of such limits in writing on a coverage selection form.

---

[1] Plaintiff names GEICO and its subsidiaries, GEICO Casualty Company, GEICO Indemnity Company, and GEICO General Insurance Company, as defendants. For the purpose of deciding this motion, the Court refers to GEICO and its subsidiaries as a single defendant.
[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because the parties are completely diverse and the amount in controversy is in excess of $5,000,000.

For the reasons stated below, the motion is granted in part and denied in part.

**I.**

For the purposes of this Motion, the Court accepts as true the facts alleged in the Complaint, and no others. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 589 (2007). Plaintiff purchased automobile insurance from GEICO over the phone at some point prior to 2008, and at that time, Plaintiff did not file an application for insurance, nor receive a CSF, nor return to GEICO an executed CSF. (Compl. ¶¶ 39, 40) Her policy renewed automatically every six-months. On or about January 21, 2008, Plaintiff contacted GEICO via telephone to change the covered vehicle and increase her bodily injury liability ("BIL") from $25,000 to $100,000.[3] (Id. ¶¶ 36, 38) Plaintiff spoke with a GEICO customer service representative ("CSR") who "was not licensed to sell, negotiate or solicit [automobile insurance] policies in . . . New Jersey." (Id. ¶ 37) During the phone call, per GEICO's standard operating procedure, Plaintiff was not offered a higher UM/UIM limit but rather "automatically"

---

[3] The fact that Plaintiff raised her BIL was another allegation not clearly set forth in the Complaint but clarified by counsel during oral argument.

maintained her existing coverage.[4]  (Id. ¶ 38)  Plaintiff did not receive any documentation of the increase in coverage.

On August 1, 2008, Plaintiff was involved in an automobile accident with an underinsured motorist.  (Compl. ¶ 43)  Plaintiff's medical bills for the treatment of her injuries exceeded $25,000.  (Id. ¶ 44)  Sometime thereafter, Plaintiff contacted GEICO to reimburse her for costs incurred above the $25,000 limit.[5]  (Id. ¶ 45)  GEICO refused.  (Id.)

On December 14, 2012, Plaintiff initiated this action seeking increased UM/UIM coverage for herself as well as similarly situated individuals and compensatory, punitive, and treble damages.  (Dkt. No. 1)  GEICO now moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[6]  (Dkt. No. 11)

**II.**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to

---

[4] Plaintiff included in the Complaint a mostly illegible "Vehicle Changes Call Map" that GEICO CSRs follow when changing the vehicle covered by an insured's policy. (Compl. ¶ 31)  GEICO provided the Court and Plaintiff with a clean copy during the hearing.
[5] The Complaint does not contain the date on which Plaintiff sought reimbursement from GEICO nor the total cost of her medical care.
[6] On June 23, 2013, Plaintiff moved to file a sur-reply and sought oral argument.  The Court granted Plaintiff's motion and request, and oral argument was held October 10, 2013.

4

dismiss, a complaint must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). In reviewing the allegations, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Instead, the complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. Phillips, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document that forms the

basis of a claim is one that is "integral to or explicitly relied upon in the complaint." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

**III.**

Plaintiff asserts fives causes of action against GEICO: (1) breach of statutory duty under N.J.S.A. 17-28-1.1, 17:28-1.9, 39:6A-23, 17:22A-29 and N.J.A.C. 11:3-15.7; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of contract; (4) violation of New Jersey's Consumer Fraud Act; and (5) violation of New Jersey's Truth in Consumer Contract, Warranty, and Notice Act. (Compl. ¶¶ 60-86)  Each claim is addressed in turn.

**A.**

Plaintiff argues that GEICO's (1) failure to inform Plaintiff of the UM/UIM coverage she forewent, and (2) its use of an unlicensed customer service representative to increase Plaintiff's BIL and change her covered automobile, both constitute actionable conduct liable to private causes of action.  The Court disagrees, and finds only GEICO's failure to inform Plaintiff of the available UM/UIM coverage grounds for a suit by Plaintiff.

**1.**

Before addressing the substance of Plaintiff's first cause of action, the Court must note the basis on which its ruling lies. During oral argument, Plaintiff's counsel clarified some of the ambiguous allegations made in the Complaint. Specifically, Plaintiff's counsel stated that the grounds for Plaintiff's first cause of action included GEICO's conduct when Plaintiff initially purchased her insurance, which was allegedly purchased over the telephone. (Transcript of Oral Argument on October 10, 2013 at 12, Ensey v. GEICO, No. 12-cv-07669 (JEI) ("[S]he never filled out a policy. She applies over the phone."); see also Compl. ¶¶ 36, 39) Following the argument, Defendant provided to the Court evidence, obtained during a previous state court suit between the parties, contesting the mode in which such insurance was purchased. Defendant submitted the deposition transcript of a GEICO representative in which the deponent testified that Plaintiff submitted an application and purchased the insurance over the internet. (Dkt. No. 28) At the present procedural posture, however, the Court does not consider Defendant's submission; its ruling is based only on the allegations contained in the Complaint as clarified by Plaintiff's counsel.

Consideration of the proposed evidence may very well require a different holding. N.J.A.C. 11:3-15.4(a)(2) sets

forth the requirements with which an insurer must comply for policies purchased over the internet, and the deficiencies in GEICO's conduct outlined below would not, in themselves, give rise to a cognizable claim. Nonetheless, the Court assumes as true those allegations put forward by Plaintiff and decides the present motion accordingly.

**2.**

N.J.S.A. 17:28-1.1,[7] 17:28-1.9,[8] 39:6A-23,[9] and N.J.A.C. 11:3-15.7, <u>inter alia</u>, require an insurer to both offer UM/UIM

---

[7] N.J.S.A. 17:28-1.1 states, in relevant part:
   Uninsured and underinsured motorist coverage shall be provided as an option by an insurer to the named insured electing a standard automobile insurance policy up to at least . . . $250,000 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit, subject to an exclusion of the first $500.00 of such damage to property for each accident, except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively.
[8] N.J.S.A. 17:28-1.9(a) states, in relevant part:
   [N]o person, including, but not limited to, an insurer . . . shall be liable in an action for damages on account of the election for a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage. Nothing in this section shall be deemed to grant immunity to any person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.
N.J.S.A. 17:28-1.9(b) states, in relevant part:
   The coverage selection form required pursuant to . . . [N.J.S.A.] 39:6A-23 shall contain an acknowledgment by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no person, including, but not limited to, an insurer . . . shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as along as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage . . . . except for that person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.
[9] N.J.S.A. 39:6A-23(a) states that "No new automobile insurance policy shall be issued . . . unless the application for the policy is accompanied by a written notice identifying and containing a buyer's guide and coverage selection form." Section (b)

coverage to prospective policy holders and inform them of the available option. Failure to satisfy this statutory obligation can ground a private right of action.[10] Weinsich v. Sawyer, 123 N.J. 333, 340 (1991); Avery v. Wysocki, 302 N.J.Super. 186, 191 (App.Div. 1997).

Although N.J.S.A. 17:28-1.9(a) provides insurers immunity from suit in certain situations, according to the facts alleged in the Complaint, such immunity is unavailable to GEICO. To be protected, an insurer must obtain "an acknowledgment by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained[.]" N.J.S.A. 17:28-1.9(b). Plaintiff alleges that no explanation was ever provided and no acknowledgment ever signed.

Defendant argues that the absence of an acknowledgment form does not preclude immunity because N.J.A.C. 11:3-15.4(a)(3), and not N.J.S.A. 17:28-1.9(b), controls the issuance of Plaintiff's policy. (Def.'s Br. at 8-9) N.J.A.C. 11:3-15.4(a)(3) specifies

---

states that "Any notice of renewal of an automobile insurance policy with an effective date subsequent to July 1, 1984, shall be accompanied by a written notice of all policy coverage information required to be provided under subsection a. of this section." Section (e) holds "A properly completed and executed coverage selection form shall be prima facie evidence of the named insured's knowing election or rejection of any option."

[10] Plaintiff's claim may best be described as one for reformation. See Oravsky v. Encompass Ins. Co., 804 F.Supp.2d 228, 236 (D.N.J. 2011) (denying in part defendant's motion to dismiss and holding that "[A]lthough the first count of Plaintiff's complaint pleads 'Breach of Statutory Duty,' the nature of Plaintiff's claim is grounded in reformation, an equitable action, and the Court finds that under New Jersey law Plaintiff has stated such a claim.") The exact contours of Plaintiff's cause of action need not be determined at the present time. For the purpose of the instant motion, it is sufficient to determine that Plaintiff has stated a cognizable claim.

that when a policy "is bound or renewed over the phone, the insurer must mail to the insured the buyer's guide, a completed coverage selection form showing the coverage choices made by the insured and an Automobile Insurance Consumer Bill of Rights within five business days of the conversation." See Baldassano v. High Point Ins. Co., 396 N.J.Super. 448, 454, n.2 (App.Div. 2007). Plaintiff alleges in the Complaint, however, that she never received any materials whatsoever from GEICO. (Compl. ¶ 40) Such allegations preclude immunity under both the statute and the administrative code.

Accordingly, Plaintiff has alleged sufficient facts to make proving her recognized cause of action plausible. Defendant's motion is consequently denied as to this claim.

**3.**

N.J.S.A. 17:22A-29 states that "A person shall not sell, solicit or negotiate insurance in this State unless the person is licensed for that line of authority in accordance with this act." Plaintiff alleges that "Defendants' actions, practices and/or conduct . . . violated N.J.S.A. 17:22A-29 by encouraging and allowing unlicensed and/or unauthorized individuals who were agents, servants and representatives of GEICO to sell, solicit and negotiate automobile liability insurance policies to their insureds." (Compl. ¶ 63)

N.J.S.A. 17:22A-29 was enacted as part of the New Jersey Insurance Producer Licensing Act of 2001 ("IPLA"). Henderson v. Hertz Corp, 2005 WL 4127090, at *2 (N.J.Super.A.D. June 22, 2006). The New Jersey Supreme Court "has concluded that there is no private right of action under IPLA." Id. at *3 (affirming the Law Division's dismissal of cause of action brought under N.J.S.A. 17:22A-29); Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255, 272 (1997) ("The IPLA concerns the licensing of insurance agents. It vests the Department of Banking and Insurance with power to revoke or to refuse to renew a license and to impose civil penalties on licensees who violate any provision of the statute or who engage in any type of fraudulent activity in the sale of insurance. It does not create a private cause of action.") This ruling is fatal to Plaintiff's claim, and accordingly, Defendant's motion in regards to this claim is granted.

**B.**

Plaintiff next alleges that GEICO breached the implied covenant of good faith and fair dealing by failing to inform her of the additional UM/UIM coverage should could have purchased and effectuating her changes through an unlicensed CSR.

"[E]very insurance contract contains an implied covenant of good faith and fair dealing," Price v. New Jersey Mfrs. Ins.

Co., 182 N.J. 519, 526 (2005), that prohibits the parties from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" Kalogeras v. 239 Broad Ave., L.L.C., 202 N.J. 349, 366 (2010) (citations and internal quotation marks omitted). "The insurance company, as the dominant party, [] has an even greater obligation than the insured to act in good faith. It must not put technical encumbrances or hidden pitfalls in the way of unsophisticated customers that would undermine their reasonable expectations." Sears Mortgage Corp. v. Rose, 134 N.J. 326, 347 (1993) (quotations omitted).

The Court agrees with Defendant that "Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing if she . . . ha[s] fully received the benefit of the contract." (Defs.' Br. at 21) Plaintiff's only response in defense is a repetition of the allegation that GEICO violated its "statutory duty to provide the UM/UIM coverage option[.]" (Pl.'s Br. at 25) Plaintiff does not identify an aspect of the contract Plaintiff was prevented from enjoying, nor does she articulate a reasonable expectation, flowing from the contract the parties entered into, that was undermined. Furthermore, Plaintiff fails to articulate any coherent support for its claim that use of the unlicensed CSRs violated the implied covenant. Accordingly, Defendant's motion is granted as to Plaintiff's

claim for breach of the implied covenant of good faith and fair dealing.

### C.

Plaintiff's third cause of action is for breach of contract. "To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." <u>Murphy v. Implicito</u>, 392 N.J.Super. 245, 265 (App.Div. 2007).

Here, Plaintiff does not allege that GEICO failed to perform its obligations under the policy. Rather, she alleges that GEICO "encourage[d] and allow[ed] unlicensed and/or unauthorized individuals . . . to sell, solicit and negotiate automobile liability insurance policies" and "erroneously inform[ed] Plaintiff . . . that [her] standard automobile insurance polic[y] did not provide for UM/UIM coverage limits up to the BIL coverage limit."[11]  (Compl. ¶¶ 74, 75.)  Plaintiff does not indicate, however, how such conduct violated the terms

---

[11] The Court notes that the Complaint is devoid of any factual matter indicating that Plaintiff was affirmatively misled as to the possible increase in UM/UIM coverage. Rather, Plaintiff's lone allegation in this regard, as supported by the factual allegations asserted, is that GEICO refrained from informing her of the opportunity to increase her coverage.

13

of her policy. Accordingly, Defendant's motion is granted as to Plaintiff's third cause of action.

**D.**

Plaintiff's fourth cause of action is violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. Originally promulgated in 1960 "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer," Senate Committee, Statement to the Senate Bill No. 199 (1960), the Consumer Fraud Act was legislatively expanded in 1971 to provide for private causes of action. Cox v. Sears Roebuck & Co., 138 N.J. 2, 14-16 (1994)  The controlling sections for private rights of action are N.J.S.A. 56:8-2 and -19. They provide:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2.

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . In any action under this section the court shall, in addition to any other appropriate legal

> or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. 56:8-19.

"To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." Cox, 138 N.J. at 17. The "stringent pleading restrictions" of Fed. R. Civ. P. 9(b) apply to NJCFA claims and require all claimants to plead "the circumstances constituting fraud or mistake . . . with particularity. . . [T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.")." Frederico, 507 F.3d at 200.

The only factual allegations contained in the Complaint that satisfy the particularity requirements are those surrounding Plaintiff's January 21, 2008 telephone call to GEICO to increase her BIL and change the automobile covered by her policy. GEICO's conduct in regards to this change in policy, however, was not fraudulent. The statutory requirements as to CSFs and Buyer Guides, which GEICO allegedly violated in regards

to the initiation of Plaintiff's policy, pertain only to new policies and the renewals of policies. N.J.S.A. 39:6A-23(a) ("No new automobile insurance policy shall be issued . . . unless the application for the policy is accompanied by a written notice identifying and containing a buyer's guide and coverage selection form."); N.J.S.A. 39:6A-23(b) ("Any notice of renewal of an automobile insurance policy with an effective date subsequent to July 1, 1984, shall be accompanied by a written notice of all policy coverage information required to be provided under subsection a. of this section.") GEICO's conduct in response to Plaintiff's requested changes does not appear to be fraudulent, and it did not violate any affirmative statutory obligations. Accordingly, Defendant's motion as to Plaintiff's NJCFA claim is granted.

**E.**

Plaintiff's fifth cause of action comes under New Jersey's Truth in Consumer Contract, Warranty, and Notice Act. Plaintiff claims that the "standard automobile insurance policies, which Defendants have offered, gave, displayed, and entered into with Plaintiff and members of the Class . . . violated clearly established legal rights of Plaintiff and the Class . . . under CFA and/or case law and precedent." (Compl. ¶ 83)

16

"The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts." Kent Motor Cars, Inc. v. Reynolds and Reynolds Co., 207 N.J. 428, 457 (2011) "The TCCWNA . . . prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law." Bosland v. Warnock Dodge, Inc., 396 N.J. Super. 267, 278 (App. Div. 2007). The statute provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.

In order to bring a claim under NJTCCWNA, a plaintiff must demonstrate (1) the plaintiff is a consumer within the statute's definition[12]; (2) the defendant is a seller, lessor, creditor, lender or bailee; (3) the defendant (a) offers or enters into a written consumer contract, or (b) gives or displays any written consumer warranty, notice, or sign; and (4) the offer or written

---

[12] "Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." N.J. Stat. Ann. § 56:12-15.

17

contract, warranty, notice or sign included a provision that violates any clearly established legal right of a consumer or responsibility of a seller.  <u>Watkins v. DineEquity, Inc.</u>, Civ. No. 11-7182 (JBS), 2012 WL 3776350, *3 (D.N.J. Aug. 29, 2012)

Plaintiff's theory of liability rests on the assumption that she has alleged a violation of the Consumer Fraud Act.  (Pl.'s Br. at 29-30)  As indicated above, Plaintiff has failed to do so.  Furthermore, apart from Plaintiff's own theory, her NJTCCWNA claim fails because she does not indicate a specific provision in the contract entered into between the parties that "violates any clearly established legal right[.]"  <u>Watkins</u>, 2012 WL 3776350 at *3.  Accordingly, Defendant's motion is granted as to this cause of action.

**IV.**

For the reasons listed above, Defendant's motion is granted in part and denied in part.  An appropriate Order accompanies this Opinion.

Date:  November 7, 2013

<u>   /s/ Joseph E. Irenas   </u>
Hon. Joseph E. Irenas
Senior United States District Judge
