UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHANNON L. ENSEY, Individually
on behalf of herself and all
others similarly situated,

      Plaintiffs,

   v.

GOVERNMENT EMPLOYERS INSURANCE
COMPANY, GEICO CASUALTY
COMPANY, GEICO INDEMNITY
COMPANY, GEICO GENERALY
INSURANCE COMPANY, and JOHN
DOES (1-300),

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-07669
     (JEI/KMW)

**OPINION**

**APPEARANCES:**

LOCKS LAW FIRM, LLC
By:  Michael A Galpern, Esq.
    Andrew P. Bell, Esq.
    James A. Barry, Esq.
800 N. Kings Highway
Cherry Hill, NJ 08034
    Counsel for Plaintiffs

ANDRES & BERGER, PC
By:  Ken Andres, Esq.
    Tommie Ann Gibney, Esq.
264 Kings Highway East
Haddonfield, NJ 08619
    Counsel for Plaintiffs

WHITE AND WILLIAMS LLP
By:  Michael N. Onufrak, Esq.
    Edward M. Koch, Esq.
LibertyView
457 Haddonfield Road, Suite 400
Cherry Hill, NJ 08002
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Plaintiff Shannon L. Ensey brings this putative class action law suit against Defendant Government Employers Insurance Company and related entities (hereinafter "GEICO" or "Defendant") for the alleged violation of its statutory obligations to inform Plaintiff of her UM/UIM coverage options when Plaintiff purchased her automobile insurance policy.

Currently pending before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for a Continuance pursuant to Federal Rules of Civil Procedure Rule 56(d).  For the reasons explained herein, the Plaintiff's motion will be **DENIED** and Defendant's motion will be **GRANTED**.


## I.  Background

The Court recites those facts relevant to deciding the pending motions.

On April 29, 2005, Plaintiff Sharon Ensey was issued a GEICO automobile insurance policy, which she had purchased via the internet.  (Plaintiff's Responsive Statement of Material Facts Not in Dispute ("P.R.S.M.F.") at 5-7)  Under this policy, Plaintiff obtained Bodily Injury Liability ("BI") coverage

limits and Uninsured/Under Insured Motorists limits of
$25,000/$50,000.  (Id. at 7)[1]

Plaintiff claims that specific policy documents – the
Buyer's Guide, Coverage Selection Form (CSF), and Customer Bill
of Rights – were not "readily available" to her on GEICO's
website before she purchased the policy, though Plaintiff does
not dispute that she could obtain access to these policy
documents through the website after she purchased the policy.
(Id. at 7-8)  Defendant, pointing to the design requirements
specification for its New Jersey website, states that the site's
New Jersey introduction page included links to these documents.
(NJ Live Software Requirements Specification, Ex. P to Def.'s
Motion for Summary Judgment ("D.M.S.J."))  Defendant also claims
that it mailed hard copies of these documents to Plaintiff
following her application over the internet.  (Defendant's
Statement of Material Facts Not in Dispute ("D.S.M.F.") ¶ 19)
Plaintiff does not recall receiving these forms, though she does
not dispute that it was Defendant's ordinary custom and practice
to mail these policy documents to an insured.  (P.R.S.M.F. at 8)
Nothing in Defendant's records indicates that the mailing was

---

[1] Plaintiff claims that Defendants pre-selected the "most written" coverage
limits, which was $15,000/$30,000 for UM/UIM, when Defendants issued
Plaintiff's policy in 2005.  P.R.S.M.F. at 7.  However, it is clear from the
policy declaration issued the day Plaintiff registered, and Plaintiff admits
elsewhere in her statement of facts, that since the inception of her policy,
Plaintiff had UIM/UM limits of $25,000/$50,000.  (Id. at 7)

returned by the post office.  Both parties agree that Defendant never received a signed CSF from Plaintiff for the policy she purchased in April 2005.

Defendant states that, over the next two years, it mailed plaintiff her policy documents, including policy cards, coverage descriptions, CSFs, a Customer Bill of Rights, and Buyer's Guides, upon each automatic six-month anniversary renewal of Plaintiff's policy.  (D.S.M.F. ¶ 21)  Plaintiff does not recall receiving these documents, but concedes that it was Defendant's ordinary custom and practice to automatically send them to an insured and that nothing in Defendant's logs suggests that the mailings were returned to sender.  (P.R.S.M.F. at 9-10)

On or about January 21, 2008, Plaintiff called GEICO to make a mid-term change to her existing policy.  (Id. at 10)  Up to this point, Plaintiff's BI and UM/UIM coverage limits remained at $25,000/$50,000.  (Id.)  During the call, Plaintiff replaced the vehicle on her policy and raised her BI limits to $100,000/$300,000.[2]  (Id.)  Plaintiff did not raise her UM/UIM limits to meet her new BI limits, though Plaintiff claims that Defendant did not inform her of her option to do so.  (Id.)  After the call, Defendant emailed Plaintiff an identification

---

[2] Defendant claims that the lease agreement for Plaintiff's new car required her to raise her BI limits to $100,000/$300,000.  (D.S.M.F. ¶ 23)  Plaintiff states that she does not remember if the lease contained that requirement (P.R.S.M.F. at 10), but offers no other explanation for the change.

4

card reflecting the changes to her policy.  (Id. at 11)
Plaintiff also states that she may have received a declaration
page reflecting these changes, which Defendant claims its
document system automatically mailed to Plaintiff after she made
the change to her policy.  (Id. at 12)

Defendant states that its document system also
automatically mailed Plaintiff policy anniversary renewal
documents, which included a CSF, Buyer's Guide, and Bill of
Rights, on March 15, 2008.  (Truslow Aff. ¶¶ 9-10)  These
documents reflected Plaintiff's new BI limit of
$100,000/$300,000 and that her UM/UIM coverage remained at
$25,000/$50,000.  Plaintiff again concedes that it was
Defendant's ordinary custom and practice to send such documents
but she does not remember receiving them.  (Id. at 12)  During
her deposition, Plaintiff admitted that she did not recall
whether she had ever read any of the policy documents Defendant
had sent her over this period of time.  (Ensey Dep. at 39:14-19)

On August 1, 2008, Plaintiff sustained serious injuries in
a motor vehicle accident caused by Carlos Torres, an
underinsured motorist.  (D.S.M.F. ¶ 1)  Plaintiff sued Mr.
Torres and Defendant in Burlington County Superior Court on or
about May 13, 2010.  (Complaint in *Ensey v. Torres*, Ex. C to
D.M.S.J.)  Mr. Torres's insurance company eventually tendered
his policy limits of $15,000.  (P.R.S.M.F. at 15-16)  Defendant

tendered an additional $10,000 to bring Plaintiff's UIM coverage up to her $25,000 policy limit.  (Id.)

Plaintiff deposed four of Defendant's employees in the *Torres* litigation between February 2011 and November 2012.  (Id. at 3-4)  Plaintiff then filed the present putative class action against Defendant in the United States District Court for the District of New Jersey on December 14, 2012.  (See Complaint) On April 2, 2014, this Court granted Plaintiff's request to issue a release and make application to the Superior Court to withdraw the amount tendered by Mr. Torres's insurance provider. (Docket No. 3)  Plaintiff did not seek release of the funds Defendant had tendered.  (Id.)  Plaintiff terminated its litigation against Mr. Torres on June 18, 2013.

In the present litigation, Plaintiff asserts five causes of action against Defendant for failing to provide her with a CSF at the inception of her coverage and failing to inform her of the opportunity to raise her UM/UIM limits throughout the course of her coverage:  (1) breach of statutory duty under N.J.S.A. 17-28-1.1, 17:28-1.9, 39:6A-23, 17:22A-29 and N.J.A.C. 11:3-15.7; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of contract; (4) violation of New Jersey's Consumer Fraud Act; and (5) violation of New Jersey's Truth in Consumer Contract, Warranty, and Notice Act.

6

On November 7, 2013, the Court granted Defendant's motion
to dismiss as to the last four claims. *Ensey v. Government
Employers Ins. Co.*, No. 12-07669 (JEI/KMW), 2013 WL 5963113
(D.N.J. Nov. 7, 2013) (hereinafter "*Ensey I*"). The Court left
standing Plaintiff's claim that Defendant breached its statutory
duties, which the Court considers to be a claim for reformation
of her insurance contract, by failing to inform Plaintiff of the
available UM/UIM coverage. *Id.* at *6. On March 11, 2014, the
Court denied Plaintiff's motion for reconsideration. *Ensey v.
Gov't Emp'rs Ins. Co.*, No. 12-07769, 2014 WL 941359 (D.N.J.
March 11, 2014) (hereinafter "*Ensey II*").

In permitting Plaintiff's breach of statutory duty claim to
stand, the Court commented that Plaintiff had asserted in her
Complaint and during oral argument that she originally purchased
her insurance policy over the phone. *Id.* at *7-8. Although
Defendant presented evidence after oral argument that Plaintiff
had actually purchased her policy over the internet,[3] which would
trigger alternative statutory notice requirements, the posture
of the case limited the Court's consideration of evidence
outside Plaintiff's pleadings. In Plaintiff's submissions
related to the present motion, Plaintiff has admitted that she

---

[3] Plaintiff had stated that she did so during her deposition in the prior
*Torres* litigation.

7

indeed purchased her insurance over the internet. (P.R.S.M.F. at 6-7; Ensey Dep. at 37:7-13)

Following discovery, Defendant moved for summary judgment as to Plaintiff's remaining claim.  In response, Plaintiff requested a continuance pursuant to Rule 56(d) in order to obtain further discovery to respond to Defendant's motion.

The Court will address Plaintiff's Rule 56(d) motion first and then Defendant's motion for summary judgment.


## II.   Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only if it will affect the outcome of a lawsuit under the applicable

8

law, and a dispute of a material fact is genuine if the evidence
is such that a reasonable fact finder could return a verdict for
the nonmoving party.  *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of
evidence showing that there is a genuine issue for trial."
*Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).
The court's role in deciding the merits of a summary judgment
motion is to determine whether there is a genuine issue for
trial, not to determine the credibility of the evidence or the
truth of the matter.  *Anderson*, 477 U.S. at 249.

If the party opposing summary judgment "believes that s/he
needs additional time for discovery," that party follows the
procedure set out in Federal Rule of Civil Procedure 56(d).
*Pa., Dept. of Public Welfare v. Sebelius*, 674 F.3d 139, 157 (3d
Cir. 2012) (internal quotations omitted) (citing *Dowling v. City
of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988).  Specifically, the
rule states:

> If a nonmovant shows by affidavit or declaration that,
> for specified reasons, it cannot present facts essential
> to justify its opposition, the court may:
> (1)    defer considering the motion or deny it;
> (2)    allow time to obtain affidavits or
>        declarations or to take discovery; or
> (3)    issue any other appropriate order

Fed. R. Civ. P. 56(d).  The affidavit or declaration must
address the following factors: "(1) what particular information
is sought; (2) how, if uncovered, it would preclude summary

judgment; and (3) why it has not previously been obtained."
*Speth v. Goode*, No. 95-0264 (JBS/AMD), 2012 WL 3277105, at *6
(D.N.J. Aug. 9, 2012) (citing *Sebelius*, 674 F.3d at 157).   When
an affidavit or declaration addresses these three requirements
with specificity, "and especially when particular information,
necessary to the successful opposition of a motion for summary
judgment, is in the sole possession of the moving party, . . .
'a continuance of a motion for summary judgment for purposes of
discovery should be granted almost as a matter of course.'
*Malouf v. Turner*, 814 F. Supp. 2d 454, 459 (D.N.J. 2011)
(quoting *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984).   On the
other hand, "[v]ague or general statements of what a party hopes
to gain through a delay for discovery under Rule 56(d) are
insufficient."   *Id.*

The list of factors detailed above "is not exhaustive.
Instead, it simply offer[s] a guide for the district court to
follow in exercising its discretion" under Rule 56(d).   *Horvath
v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 458 (3d Cir.
2003).

### III.   Rule 56(d) Analysis

Defendant filed its motion for summary judgment on the
grounds that (1) GEICO is statutorily immune from Plaintiff's
suit, and (2) even if GEICO has not satisfied the requirements

for statutory immunity, Plaintiff has not presented evidence sufficient to support her underlying reformation claim.  In response, Plaintiff filed a Rule 56(d) motion seeking a continuance so as to obtain further discovery.  Plaintiff's counsel Andrew P. Bell submitted a certification in support of Plaintiff's motion.  (Certification of Andrew P. Bell ("Bell Cert."))  As stated above, this certification must specify the particular information Plaintiff seeks through further discovery, how this information would preclude summary judgment, and why this information was not previously obtained.

The Bell Certification identifies the information Plaintiff seeks to obtain as four depositions, for which she has already provided notice, "concerning the layout, structure, history, etc. of Defendant's website and Defendant's history of obtaining Coverage Selection Forms for its Insureds," and further "limited depositions" of other GEICO employees who testified in the earlier *Torres* litigation.  (Bell Cert. ¶ 9)  The Certification also states that Plaintiff needs "further document production" concerning "the website issues."  (Id. ¶ 14)  Mr. Bell writes that the documents Defendant has so far produced provide no detail as to how policy documents were "readily available" on GEICO's website.  (Id. ¶¶ 13-14)  Finally, the Certification explains that Plaintiff did not seek such discovery during the

*Torres* litigation because Defendant's alleged statutory breach was not an issue in that case.  (Id. ¶ 15)

Defendant argues that the Bell Certification fails to make the showing necessary for the Court to grant Plaintiff's Rule 56(d) motion.  Specifically, Defendant states that the Certification does not explain how the discovery Plaintiff seeks to obtain would preclude summary judgment and that Plaintiff had the opportunity to ask for details regarding Defendant's website during the prior *Torres* litigation.

Plaintiff claims that discovery it has requested will preclude summary judgment because it may demonstrate that a genuine issue of material fact exists with regards to whether documents detailing Plaintiff's coverage options were "readily available" on Defendants' website when Plaintiff applied for car insurance – the basis for one of Plaintiff's arguments that Defendant breached its statutory notice requirements.  With regards to why this discovery was not previously obtained, Plaintiff states that the specific content of Defendant's website was not relevant in the *Torres* litigation.

While the Court agrees that the structure of Defendant's website, particularly how Defendant linked to required policy documents, was not at issue in the prior litigation, the Court cannot find any legitimate explanation as to how the further discovery Plaintiff seeks will yield evidence that would

12

preclude summary judgment in favor of Defendant.  As the Court sees it, Plaintiff's Rule 56(d) motion relates only to discovery that will go to the immunity issue – whether Defendant is statutorily immune from Plaintiff's reformation suit because it complied with the directives of N.J.S.A. 17:28-1.9.[4]  However, as explained below, New Jersey courts have found the immunity and reformation issues to be necessarily distinct.  *See Bilotti v. USAA Cas. Ins. Group*, No. L-5416-04, 2007 WL 4119220, at *3-4 (N.J. Super. App. Div. Nov. 21, 2007) (holding that an insured must still satisfy the elements of a reformation claim even though the insurer was unable to prove statutory immunity provided by N.J.S.A. 17:28-1.9).  If Defendant were not immune from Plaintiff's current lawsuit, Plaintiff would still need to prove her reformation claim, which requires clear and convincing evidence of mutual mistake regarding the extent of Plaintiff's coverage, or a unilateral mistake and fraud or unconscionable

---

[4] To briefly summarize the underlying statutory framework, N.J.S.A. 17:28-1.1 requires insurers to provide the insured with a minimum amount of UM/UIM coverage and the option to elect up to $500,000, or the chosen BI limit, in UM/UIM coverage.  N.J.S.A. 39:6A-23 contains notification guidelines for informing an insured about his or her coverage options.  That statute requires an insurer to provide an insured with written notice identifying and containing a buyer's guide and CSF.  In 1993, the New Jersey legislature passed N.J.S.A. 17:28-1.9, the immunity statute, which affords insurers statutory immunity if an insured signs and returns the CSF section 39:6A-23 requires the insurer to provide.  This immunity "is based on the assumption that the insurer will have complied with the dictates of N.J.S.A. 39:6A-23 by providing the insured with an adequate description of the available coverages and their limits." *Baldassano*, 396 N.J. Super. at 454.  Issued by the Department of Insurance, N.J.A.C. 11:3-15.4(a) allows insurers to satisfy the notice requirements of N.J.S.A. 39:6A-23 for those who apply for coverage over the internet by making the buyer's guide, CSF and automobile insurance consumer bill of rights "readily available" on the insurer's website.

conduct on Defendant's part.  *See Heake v. Atlantic Cas. Ins. Co.*, 15 N.J. 475, 481 (1954).  In other words, the fact that further discovery may provide evidence pertinent to the immunity question does not mean such discovery will impact Plaintiff's underlying reformation claim.

As the Court discusses in greater detail below, Plaintiff has not submitted evidence sufficient to find in her favor on the reformation claim.  The discovery she now seeks would not change that fact.  Even if depositions and document requests show that Defendant's website did not satisfy the statutory requirements for immunity, such evidence would not establish a mutual mistake or a unilateral mistake and fraudulent conduct on Defendant's part.

Since the Court holds that Plaintiff cannot satisfy the elements of a reformation claim regardless of whether Defendants can assert statutory immunity, further discovery related to the immunity issue will not affect Defendant's motion for summary judgment.[5]  The Court will therefore deny Plaintiff's Rule 56(d) motion.

---

[5] The Court does not find here that the discovery Plaintiff seeks would affect the outcome of the immunity issue.  In fact, there is strong evidence that GEICO's website included links to these documents, though GEICO has not provided a screenshot of the New Jersey Introduction page so as to show the exact contours of these links.  While the Court doubts that any further discovery would affect a decision on the immunity question, we need not reach such a decision in this case.

### IV.   Summary Judgment Analysis

In support of its motion for summary judgment, Defendant first asserts statutory immunity from Plaintiff's suit under N.J.S.A. 17:28-1.9.  Second, even if it has not satisfied the requirements for statutory immunity, Defendant argues that Plaintiff has not presented evidence sufficient to support her underlying reformation claim.

The Court holds that, regardless of the immunity question, and even making all inferences in her favor, Plaintiff has not submitted evidence proving her entitlement to reformation of her insurance contract.  Since Plaintiff cannot succeed on the underlying claim, the Court need not address the immunity issue.

### A. Reformation Claim Requirements

As the Court stated in its decision on Defendant's motion to dismiss, Plaintiff's only remaining claim in this case for "breach of statutory duty" is best described as one for reformation.  *Ensey I*, at *9, n. 10 (citing *Orvasky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 236 (D.N.J. 2011)).  Reformation constitutes an equitable remedy available where "there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party."  *Orvasky*, 804 F. Supp. 2d at 236 (citing *Heake*, 15 N.J. at 481).  "For a court to grant reformation, there must be clear and convincing proof that the contract reformed is what

15

the contracting parties understood and meant it to be."
*Pieredes v. Geico Ins. Co.*, No. L-3995-08, 2010 WL 1526377, at
*4 (N.J. Super. App. Div. Apr. 19, 2010).  Courts will not grant
reformation "on the grounds of mistake resulting from the
complaining party's own negligence," particularly where such
negligence relates to "the duty imposed upon an insured to
examine his policy upon receipt, and if its terms are found to
deviate from the original contract agreed upon, to notify the
insurer immediately and refuse to accept the policy."  *Id.*
(internal quotations and citations omitted).  *Bilotti*, 2007 WL
4119220, at *4.

       An insurance company can claim immunity from a customer's
reformation action if the insurer complies with certain
statutory notice requirements, as long as the insurer's conduct
is not willful, wanton or grossly negligent.  *Avery v. Wysocki*,
302 N.J. Super. 186, 189-90 (App. Div. 1997) (citing N.J.S.A.
17:28-1.9).  To meet the requirements for immunity, an insurer
must comply with N.J.S.A.'s notice requirements and receive an
executed CSF from the insured.  N.J.S.A. 17:28-1.9.  The New
Jersey Administrative Code (N.J.A.C.), which provides an
exception to the notice requirements for policies purchased over
the internet, states that insurers need only make the relevant
policy documents "readily available" to the insured on their
websites.  Defendant argues that this exception vitiates an

insurer's requirement to receive a signed CSF in order to obtain
immunity under N.J.S.A. 17:28-1.9.

"New Jersey courts have noted that 'reformation is
available as a remedy for an insurer's failure to comply with
notice requirements.'" *Orvasky*, 804 F. Supp. 2d at 236 (quoting
*Pierides*, 2010 WL 1526377, at *5. However, "plaintiffs still
bear the obligation of proving their entitlement to that
remedy." *Pieredes*, 2010 WL 1526377, at *5. "The Legislature
has chosen to confer immunity upon an insurer if it can
demonstrate statutory compliance. It did not, however, choose
to relieve plaintiff of her burden of proof." *Bilotti*, 2007 WL
4119220, at *4.

### B. Plaintiff's Reformation Claim

Plaintiff's reformation claim relies on Defendant's alleged
noncompliance with its statutory notice requirements under
N.J.S.A. 17:28-1.1, 17:28-1.9, 39:6A-23, and N.J.A.C. 11:3-15.4,
which require an insurer to both offer UM/UIM coverage to
prospective policy holders and inform them of the available
options. Plaintiff asserts that her policy documents were not
"readily available" on Defendant's website when she originally
purchased her policy in 2005 and that Defendant never received a
signed CSF from Plaintiff. For these reasons, Plaintiff claims
her policy never became "effective." Plaintiff argues that a
resulting domino effect required Defendant to comply with

17

statutory notice requirements for new policies during subsequent
renewals – each of which Plaintiff considers a "newly issued"
policy – but that Defendant did not do so.  Consequently, when
Plaintiff raised her BI limits in January 2008, that also
counted as a "new" policy and Defendant was bound to inform her
of her option to elect UM/UIM coverage up to the new BI limits
and to procure a signed CSF.  Since Defendant did not comply
with these requirements, Plaintiff argues that her policy should
be reformed so as to raise her UM/UIM limits to match her higher
BI limits.

   As an initial matter, the Court rejects Plaintiff's
contention that her policy never became "effective."  Plaintiff
clearly believes the policy to be effective for the sake of her
current lawsuit – there must be a policy under which she seeks
to recover.[6]  Neither does the Court understand how, if it were
to accept that Plaintiff's policy never became effective, the
logical result would be to match her UM/UIM limits to her BI
limits for the same non-effective policy.  Further, based on
Plaintiff's argument, individuals purchasing insurance could
simply refuse to send insurers signed CSFs with the knowledge

---

[6] One need not look further than Plaintiff's Complaint in the *Torres*
litigation, where she states "[a]t all times mentioned herein, plaintiff,
Shanon L. Ensey, was insured under a policy of insurance issued by the
defendant, GEICO, pursuant to Policy No. 4037 88 4634." (*Torres* Complaint at
3)  It seems paradoxical for Plaintiff to claim a policy was issued in her
Complaint, but to base her recovery here on the theory that the policy was
never actually issued.

that if and when an accident occurs, the insureds could seek reformation of their insurance contracts so as to obtain better coverage.

In reality, Plaintiff brought suit because she was unhappy with her level of coverage following an automobile accident and sought to reform her insurance contract so as to obtain better coverage.  Yet, while the statutory notice issues Plaintiff raises certainly go to Defendant's immunity argument, they do not alone establish her right to reformation.  Plaintiff does not provide any evidence of a mutual mistake regarding her coverage or a mistake on her part and fraud on Defendant's part. She does not state that she thought her UM/UIM coverage was higher, or that she believed she could not raise her UM/UIM limits after she raised her BI limits.  With regards to her initial purchase of insurance in 2005, Plaintiff testified in her deposition that she does not remember what coverage she purchased or why she chose that level of coverage, let alone whether she did not choose higher limits because she was not aware of that option.  (Ensey Dep. 39:20-41:14)

Even if Plaintiff was mistaken as to her option to purchase better UM/UIM coverage, Plaintiff has not proven that Defendant committed fraud or other unconscionable conduct.  Plaintiff relies on her assertions that Defendant failed to meet statutory notice requirements without further evidence that Defendant

19

intended to mislead her in any way.  Yet, there is no dispute
that it was Defendant's ordinary custom and practice to send
Plaintiff her policy documents that detailed coverage options.
This surely does not constitute clear and convincing evidence of
fraud.

The Court finds the Appellate Division's unpublished
decision in *Bilotti* to be informative.  In *Bilotti*, the trial
court had concluded that the defendant insurer was not entitled
to statutory immunity, but still denied the plaintiff's
reformation claim based on plaintiff's negligence in failing to
examine the declaration pages she had received for the alleged
discrepancy at issue.  2007 WL 4119220, at *4.  On appeal, the
plaintiff argued that the "natural consequence of defendant's
inability to prove statutory compliance should be reformation."
*Id.* at *3.  In affirming the trial court's decision, the
Appellate Division stated that the plaintiff "confuse[d] the
distinction" between denying the defendant immunity and
relieving plaintiff of her burden to prove her underlying claim,
and found that the trial judge had "appropriately considered
whether plaintiff had demonstrated the necessary elements that
would support her claim for reformation."  *Id.* at *3-4.

Plaintiff argues here that the Court should deny
Defendant's motion for summary judgment simply because Defendant
breached its statutory notice duties, particularly the fact that

Defendant never received a signed CSF from Plaintiff.[7]  However, Plaintiff fails to recognize the distinction between Defendant's immunity defense, which relies on Defendant having satisfied the notice requirements, and her burden of proof in the underlying reformation claim.  Plaintiff has not presented any evidence, let alone clear and convincing evidence, that there was a mutual mistake regarding her coverage limits, or a mistake on her part and fraud or unconscionable conduct on Defendant's part.

Finally, Plaintiff has not presented sufficient evidence to prove that any potential mistake regarding her lower UM/UIM coverage resulted from Defendant's failure to inform her of coverage options rather than her own negligence.  Plaintiff concedes that, after she made her mid-term policy change in January 2008, she "may have been sent a Declaration page" detailing her coverage amounts, which Defendant claims its document system automatically sent to Plaintiff.  (P.R.S.M.F. at 12)  She also concedes that it was Defendant's "ordinary custom and practice" to send her the Buyer's Guide, CSF, and Bill of Rights upon her March 2008 automatic renewal, along with all her prior automatic renewals, though she does not recall receiving those documents.[8]  (Id.)  Last, Plaintiff concedes that she could

---

[7] In a footnote, Plaintiff goes so far as to say that she would be entitled to summary judgment in her own favor on this issue alone.  (Pl.'s Opp. at 10, n. 6)

[8] Importantly, "[p]roof of mailing the required materials, not the insured's receipt, establishes the presumption of receipt" so as to satisfy the notice

access these policy documents on Defendant's website at any time after first purchasing her policy in 2005. (Id. at 8)

New Jersey courts have recognized that insureds have "an obligation to act as conscientious policyholders." *Pieredes*, 2010 WL 1526377, at *9. Declaration sheets are the documents "most likely to be read and understood by the insured," and "at a minimum, the insured must . . . upon receipt, 'examine the declaration page to assure himself that the coverages and their amounts . . . accord with his understandings of what he is purchasing.'" *Id.* (quoting *Lerhoff v. Aetna Cas. And Sur. Co.*, 271 N.J. Super. 340, 346-47 (App. Div. 1994)). Plaintiff had numerous opportunities and sufficient time to review her policy and coverage options between the time she first purchased insurance in March 2005 and her mid-term policy change in January 2008. She had an obligation to read the Declaration page she received after her mid-term change, which would have shown that her UM/UIM limits remained at $25,000/$50,000 after she increased her BI limits. Her March 2008 anniversary renewal documents included a CSF, which states that she could raise her

---

requirements in N.J.S.A. 39:6A-23(a). *Baldassano*, 396 N.J. Super. at 454-55. "To establish proof of mailing, the insurer must provide evidence of the custom of mailing combined with reliable testimony of the person charged with the duty of carrying out the custom." *Id.* at 455. Here, Defendant has provided copies of the mailings and an affidavit from the individual who oversees the mailing of policy documents. (see Affidavit of Donna Truslow, Ex. M to D.M.S.J.) Further, as mentioned above, Plaintiff does not dispute that mailing such documents was Defendant's ordinary practice.

UM/UIM limits to match her BI limits.  (March Policy Documents, Ex. 1 to Pl.'s Opp.)  Yet, when asked during her deposition whether she even took a look at the documents Defendant mailed her over the years to see what they said, Plaintiff responded that she does not remember if she did or did not.  (Ensey Dep. at 39:14-19)  On this record, a reasonable fact finder would conclude that Plaintiff failed in her obligation to act as a conscientious policyholder and therefore cannot seek reformation of her insurance contract.

Since Plaintiff has not submitted sufficient evidence to support her reformation claim, and her lower than desired UM/UIM limits resulted from her own negligence rather than Defendant's mistake or fraudulent conduct, the Court will grant Defendant's motion for summary judgment.

## IV.

For the reasons set forth above, the Court will **DENY** Plaintiff's Rule 56(d) Motion for a Continuance and **GRANT** Defendant's Motion for Summary Judgment.  An appropriate Order accompanies this Opinion.

Date: March 17, 2015

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

23